UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 10-37-GWU


MARGIE STEWART,                                               PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                   DEFENDANT.


**INTRODUCTION**

Margie Stewart brought this action to obtain judicial review of an unfavorable

administrative decision on her applications for Disability Insurance Benefits and for

Supplemental Security Income.  The case is before the court on cross-motions for

summary judgment.

**APPLICABLE LAW**

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

2.    If the claimant is not currently engaged in substantial gainful
      activity, does he have any "severe" impairment or combination
      of impairments--i.e., any impairments significantly limiting his
      physical or mental ability to do basic work activities?  If not, a
      finding of non-disability is made and the claim is denied.

3.    The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g.,  Faucher

v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the

ways for the Commissioner to perform this task is through the use of the medical

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work

experience.

One of the residual functional capacity levels used in the guidelines, called

"light" level work, involves lifting no more than twenty pounds at a time with frequent

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category

if it encompasses a great deal of walking or standing, or when it involves sitting

most of the time with some pushing and pulling of arm or leg controls; by definition,

a person capable of this level of activity must have the ability to do substantially all

these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

the capacity to lift no more than ten pounds at a time and occasionally lift or carry

small articles and an occasional amount of walking and standing.  20 C.F.R. §

404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly

diminishes his capacity to work, but does not manifest itself as a limitation on

strength, for example, where a claimant suffers from a mental illness . . .

manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Stewart, a 46-year-old former biscuit maker with a "limited" education, suffered from impairments related to obesity, diabetes mellitus, and back pain. (Tr. 12, 16). While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work. (Tr. 14, 16). Since the available work was found to constitute a significant number of jobs in the national economy, she could not be considered totally

disabled. (Tr. 17). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Id.).

After review of the evidence presented, the undersigned concludes that the administrative decision is not supported by substantial evidence. However, the current record does not mandate an immediate award of Social Security benefits. Therefore, the court must grant the plaintiff's summary judgment motion, in so far as it seeks a remand of the action for further consideration, and deny that of the defendant.

The ALJ found that Stewart's problems with anxiety and depression caused no more than minimal limitation in her ability to function and, so, did not constitute a "severe" impairment. (Tr. 13). The plaintiff asserts that the record reveals a mental condition severe enough to meet the requirements of §§ 12.04 and 12.06 of the Listing of Impairments and, so, the ALJ's finding on this issue was erroneous. The court agrees that the ALJ's finding on this issue is not supported by substantial evidence.

Stewart was treated for mental problems at the Cumberland River Comprehensive Care Center. (Tr. 297-311). In August of 2007, an anxiety disorder was diagnosed. (Tr. 298). In September of 2008, a diagnosis of a major depressive disorder was noted. (Tr. 311). Specific mental restrictions were not identified by the Cumberland River staff. However, the plaintiff's Global

Assessment of Functioning (GAF) was rated at 58 and 65.  (Tr. 297, 311).  Such GAF ratings suggest the existence of "mild to moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Thus, the Cumberland River treatment records suggest the existence of a "severe" mental impairment imposing at least some restriction on the claimant's ability to perform work-related activities.

Psychologist Barbara Belew was the only other mental health professional to examine Stewart.  Belew diagnosed a major depressive disorder, post traumatic stress disorder, borderline intelligence and a possible personality disorder.  (Tr. 209).  The plaintiff's GAF was rated at 45, suggesting the existence of "serious" psychological symptoms.  (Id.).  The examiner indicated that the claimant would have a "poor" ability in most areas of mental functioning including relating to co-workers, dealing with the public, using judgment, interacting with supervisors, dealing with work stresses, functioning independently, handling complex and detailed job instructions, behaving in an emotionally stable manner and relating predictably in social situations.  (Tr. 210-211). Belew also suggested that Stewart might meet the requirements of §§ 12.04 and 12.06 of the Listing of Impairments and rated her ability as "moderate" in Activities of Daily Living, "moderate to marked" in social functioning, "mild to moderate" in concentration, persistence and pace, and

8

"moderate" in adaptive functioning.  (Tr. 209). Since each of the Listing Sections would require a rating of "marked" in two areas,  Belew's report does not support the existence of a mental impairment of Listing severity.  Nevertheless, the psychologist did identify a number of severe mental restrictions and the opinion strongly supports the plaintiff's claim that the ALJ erred in failing to find that she suffered from a "severe" mental impairment.

The ALJ gave little weight to Belew's opinion because he felt she ignored her own personality testing which suggested that Stewart was exaggerating her symptoms.  (Tr. 13).  The psychologist had administered the Personality Assessment  Inventory (PAI) to the plaintiff.  (Tr. 207).  The examiner did indicate that "her PAI results reveal that she may have exaggerated some elements of distress."  (Tr. 208).  However, the examiner also reported that this did not render the results uninterpretable, only that they should be "reviewed with caution."  (Tr. 207).  Belew went on to opine that this problem was the result of her "intellectual deficits and lack of sophistication with psychological issues." (Tr. 208).  The psychologist stated that the overall examination results indicated that the claimant "clearly has many areas of emotional distress, and those are affecting every area of her life."  (Id.).  Thus, Belew clearly did not ignore the results of her own personality testing.  She considered it but still thought that Stewart suffered from significant mental problems.  The psychologist's report suggests the existence of

significant mental impairments and the ALJ should at least have sought the advice of a medical advisor rather than substituting his own lay opinion for that of the mental health professional.  Therefore, a remand of the action for further consideration of the plaintiff's mental condition is required.

Stewart also argues that the ALJ erred by failing to credit the opinion of Dr. David Muffly, an examining consultant.  Dr. Muffly identified the existence of severe physical restrictions which would limit the plaintiff to less than the full range of sedentary level work.  (Tr. 201-204).  Dr. Muffly was not a treating source whose opinion would be entitled to superior weight.   His opinion would arguably be offset by that of Dr. Daniel Stewart, another examiner, who found no physical limitations which would preclude work activity. (Tr. 193).  The ALJ relied upon this opinion over that of Dr. Muffly.  (Tr. 16).  However, the plaintiff notes that Dr. Muffly was an orthopedic specialist. The administrative regulations provide that "we generally give more weight to the opinion of a specialist about medical issues related to areas of his or her area of speciality than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).  Therefore, the ALJ should carefully consider this point upon remand of the action.

Stewart raises several other arguments concerning why the ALJ erred with which the court does not agree.  Stewart asserts that the ALJ erred in failing to find that she met the requirements of § 1.05 of the Listing of Impairments concerning

amputation of one or more extremities or the pelvis.  However, the medical record does not reveal the existence of such problems.  If this section was cited in error, the claimant will be able to make arguments as to how other sections of the Listing of Impairments were met upon remand.  Therefore, the court must reject the plaintiff's assertion.

Stewart also argues that the ALJ did not properly evaluate her subjective pain complaints.  Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Stewart  was found to be suffering from a potentially painful condition.  However, even if she could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.  Dr. Stewart noted that she walked with a normal gait and station.  (Tr. 192).  Musculoskeletal examination revealed a normal range of motion at all levels.  (Id.).  Muscle strength was intact and straight leg raising negative bilaterally.  (Id.).  The  medical reviewer did not believe that the medical evidence supported the existence of a "severe" physical impairment.  (Tr. 196).

Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.  Therefore, the ALJ would appear to have properly evaluated Stewart's pain complaints.

The undersigned concludes that the administrative decision must be reversed and the action remanded for further consideration of Stewart's mental condition.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 3rd day of November, 2010.


**Signed By:**

*G. Wix Unthank*

**United States Senior Judge**